**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

PAMELA JOYCE LAY CAMERON     CIVIL ACTION NO. 18-0526

VERSUS     JUDGE S. MAURICE HICKS, JR.

NATIONSTAR MORTGAGE, LLC,     MAGISTRATE JUDGE HORNSBY
ET AL.

**MEMORANDUM RULING**

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Record Document 17. Plaintiff Pamela Joyce Lay Cameron ("Cameron") opposes the motion. See Record Document 24. Wells Fargo seeks dismissal of all of Cameron's claims. For the reasons set forth below, Wells Fargo's motion is hereby **GRANTED**.

**I.    BACKGROUND**

This action concerns several claims alleged by Cameron relating to a mortgage loan executed by her late husband, Robert Waldon Cameron, Jr. ("Mr. Cameron"). On or about August 25, 2011, Mr. Cameron entered into a reverse mortgage loan with Wells Fargo, which was secured by the Camerons' home located at 8955 Marlow Drive, Shreveport, Louisiana. See Record Document 17-1 at 6. Although Cameron and her husband both executed the mortgage, Mr. Cameron was the sole signatory and borrower under the note and mortgage loan. See Record Document 17-2 at 3.[1] On July 18, 2017,

---

[1] The Court notes that while its review of a Rule 12(b)(6) motion to dismiss is generally limited to the plaintiff's complaint, documents attached by a defendant are properly considered "if they are referred to in the plaintiff's complaint and are central to her claim," and "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." Carter v. Target Corp., 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting

Mr. Cameron passed away, which was approximately six years after the loan was entered into. See Record Document 1-1 at 8; Record Document 17-1 at 8.

Cameron alleges that Wells Fargo made several representations to both her and her husband regarding the mortgage loan, including, *inter alia*, that "there would be no problem with "[Cameron], should she survive her husband, being able to pay the reverse mortgage monthly installment payments and to remain in the home." See Record Document 1-1 at 7. Cameron further claims that Wells Fargo violated multiple Louisiana statutes by allegedly failing to provide counseling services to her or her husband relating to the reverse mortgage loan. See id. at 14.

Cameron alleges that, unbeknownst to her, Wells Fargo declared the mortgage loan in default and transferred the loan to Nationstar Mortgage, LLC ("Nationstar") as of September 1, 2017. See id. at 9. Cameron also states that on or about October 5, 2017, she began receiving monthly statements pertaining to the mortgage loan stating that the loan was due and payable in full. See id. at 10. Additionally, Cameron asserts that on January 5, 2018, she was informed by Nationstar that the loan was due and that foreclosure was imminent. Id. at 11.

On or about January 24, 2018, Nationstar initiated a foreclosure action in the First Judicial District Court, Caddo Parish, Louisiana. See id. at 12. A notice of seizure was subsequently issued, seizing the Cameron property. Id. Although a sheriff's sale of the property was scheduled for May 2, 2018, the sale was cancelled pending the outcome of this litigation. See Record Document 17-1 at 9. On March 12, 2018, Cameron filed a

---

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000) (citations omitted)).

"Petition to Annul Executory Orders, for Injunctive Relief, Including Arrest of Impending Sheriff's Sale, Additional Injunctive Relief, Declaratory Relief and for Damages and Other Awards" (the "Petition"), which was subsequently removed to this Court, alleging various state and federal claims against Wells Fargo regarding the legality and enforcement of the reverse mortgage loan. See id.

## II. LAW AND ANALYSIS

### A. Pleading and 12(b)(6) Motion to Dismiss Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally may not "go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a

court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678–79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

### B. Claims Regarding Wells Fargo's Alleged Oral Representations

Cameron alleges a variety of claims against Wells Fargo, many of which are only supported by legal conclusions and unsubstantiated assertions. The central argument of Cameron's allegations is that Wells Fargo is prohibited from foreclosing on the mortgage entered into by Cameron's deceased husband due to alleged oral promises made by Wells Fargo to Cameron, as well as multiple alleged violations by Wells Fargo of, *inter alia*, the Louisiana S.A.F.E. Residential Mortgage Lending Act (the "S.A.F.E. Act"), La. R.S. § 6:1081 *et seq.*, and other Louisiana law.

The Court first addresses Cameron's claim that Wells Fargo cannot enforce the mortgage because of several oral assurances it made to Cameron regarding her alleged rights under the mortgage. See Record Document 1-1 at 7. Under the Louisiana Credit Agreement Statute ("LCAS"), La. R.S. § 6:1122, no action can be maintained on a "credit

agreement"[2] unless the agreement is in writing. Courts have explained that the LCAS effectively "operates as a 'statute of frauds' for the credit industry," Bombet v. Donovan, No. 13-0118, 2015 WL 65255, at *2 (M.D. La. Jan. 5, 2015) (citations omitted), and that its purpose is "to prevent potential borrowers from bringing claims against lenders based on oral agreements," id. (quoting EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, 467 F.3d 466, 469 (5th Cir. 2006)).

Cameron argues that Wells Fargo cannot proceed with its planned foreclosure of the property because it orally represented to Cameron that she would be able to continue paying monthly installments on the mortgage and remain in the home if her husband predeceased her. See Record Document 1-1 at 7. Wells Fargo responds that none of Cameron's allegations are actionable because none of them were made in writing, and thus any claims based on these alleged assurances are barred under the LCAS. See Record Document 17-1 at 10.

In this case, the Court agrees with Wells Fargo's argument that Cameron's claims, to the extent they are based on any alleged oral representations made to her by Wells Fargo in connection with the mortgage, are not actionable under Louisiana law. The LCAS, as well as the caselaw interpreting that statute, clearly show that Cameron's claims must fail because they rest entirely on her assertion that Wells Fargo orally agreed that she would be able to remain in her home in the event her husband predeceased her. See Record Document 1-1 at 7–8; see also Jesco Constr. Corp. v. NationsBank Corp., 02-57 (La. 10/25/02), 830 So. 2d 989, 992 (holding on certified question from the Fifth Circuit

---

[2] A "credit agreement" is defined under the LCAS as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La. R.S. § 6:1121(1).

that the LCAS bars all claims against lenders based upon oral agreements, not just contract claims). Because none of the facts asserted by Cameron suggest that Wells Fargo entered into any written agreement, other than the mortgage agreement itself,[3] regarding her alleged rights under the mortgage loan, see Record Document 1-1 at 7–8, 17, Cameron cannot maintain any of her claims based on Wells Fargo's alleged oral representations.

### C. Claims Under the S.A.F.E. Act

In addition to her claims regarding Wells Fargo's alleged oral misrepresentations, Cameron argues that the reverse mortgage loan is void and unenforceable due to Wells Fargo having violated multiple provisions of the S.A.F.E. Act by failing to provide the necessary counseling notices and commitment letter prior to closing of the loan. See Record Document 24 at 12–14. The S.A.F.E. Act primarily regulates residential mortgage lenders and grants authority to the Commissioner of the Office of Financial Institutions (the "Commissioner") to enforce its provisions. See La. R.S. § 6:1081. Specifically, the act authorizes the Commissioner to examine lenders' records, suspend or revoke lenders' licenses, and investigate potential violations by lenders and report them to the attorney general for criminal penalties. See id. §§ 6:1091–92, 6:1099.

Regarding Cameron's claims under the S.A.F.E. Act, Wells Fargo rejects Cameron's assertion that it violated any of the statute's provisions and, further, that even

---

[3] In fact, the express language of the mortgage executed by Cameron and her husband provides that "Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]" See Record Document 17-3 at 4. As noted above, Cameron's husband was the sole signatory and borrower under the note and mortgage loan. See Record Document 17-2 at 3.

if Cameron's allegations were accepted as true, Cameron cannot maintain an action pursuant to the S.A.F.E. Act because the statute's administrative enforcement scheme does not provide for a private right of action as a remedy. See Record Document 17-1 at 13–14. Lastly, Wells Fargo maintains that Cameron provides no authority for her argument that the violation of any of the S.A.F.E. Act's provisions somehow renders the mortgage loan void. See Record Document 34 at 7.

Here, the Court finds that Cameron's claims under the S.A.F.E. Act fail for several reasons. First, while it appears that no state or federal court has specifically addressed whether the S.A.F.E. Act provides for a private a right of action, Louisiana caselaw has clearly held that courts are not to find an implied private right of action within a statute where an administrative enforcement scheme is already provided for. See, e.g., Collins v. State of Louisiana, 12-1031 (La. App. 1st Cir. 5/30/13), 118 So. 3d 43, 47–48 (holding that no right of action existed under the Code of Governmental Ethics Whistleblower Statute because only administrative remedy was provided); Guilbeaux v. Guilbeaux, 08-17 (La. App. 3d Cir. 4/30/08), 981 So. 2d 913, 917 (finding no right of action under an abuse and neglect statute where statute only provided for enforcement by state agency). Therefore, because the S.A.F.E. Act only provides for enforcement by the Commissioner, the Court abstains from creating a private right of action within the statute when the Louisiana Legislature itself declined to do so. See Theriot v. Midland Risk Ins. Co., 95-2895 (La. 5/20/97), 694 So. 2d 184, 187 (explaining that under the doctrine of *expressio unius est exclusio alterius*, "when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional").

Furthermore, even if Cameron was afforded some private remedy under the S.A.F.E. Act, Cameron fails to provide any authority supporting her assertion that the violation of any of the S.A.F.E. Act's requirements renders the mortgage loan void or otherwise prevents a mortgagee from foreclosing on the loan. See Record Document 24 at 19–20; Record Document 34 at 7–8.[4] Accordingly, Cameron's claims under the S.A.F.E. Act must be denied.

### D. Claim Under the Louisiana Unfair Trade Practices Act ("LUTPA")

Cameron also brings a claim in which she broadly alleges that Wells Fargo is liable to her for its alleged "[v]iolations of the [LUTPA]." See Record Document 1-1 at 20. However, the Court also finds this claim meritless. First, Cameron wholly fails to allege any facts to support her claim that Wells Fargo committed any violations under the LUTPA. See id. Notwithstanding the absence of any factual allegations in her Petition, Cameron's legal arguments in support of this claim are flatly inconsistent with the applicable caselaw that clearly holds that Wells Fargo (as well as other federally insured financial institutions) is exempt from liability under the act. See, e.g., Mariche v. Wells Fargo Bank, N.A., No. 11-1191, 2012 WL 1057626, at *2 (E.D. La. Mar. 28, 2012) ("Because Wells Fargo is a federally insured financial institution and is regulated as a nationally chartered bank by the Office of the Comptroller of the Currency, it is exempt from application of the LUTPA."); see also Truong v. Bank of America, N.A., 717 F.3d

---

[4] In an analogous case by the Fifth Circuit with nearly identical facts, the court held that "while HUD may have violated § 1715z–20(j) by insuring a reverse mortgage that failed to protect . . . the non-borrowing spouse, this would not affect [the lender's] right to foreclose under the terms of the contract it executed with [the borrowing spouse]." See Jeansonne v. Generation Mortg. Co., 644 F. App'x 355, 357 (5th Cir. 2016) (citation omitted).

377, 385 (5th Cir. 2013). Therefore, Cameron's LUTPA claim is without merit and must be dismissed.

### E. Remaining Claims

Lastly, the Court addresses Cameron's "non-exclusive" list of additional claims set forth in paragraph 90 of her Petition, including her claims for, *inter alia*, "deception and false representation[]," "fraud in the inducement," and "[v]iolation of plaintiff's constitutional and civil rights." Record Document 1-1 at 20. These claims are not only vaguely alleged in conclusory fashion but are also wholly devoid of any factual support to render them sufficient under the plausibility standard. See id. Accordingly, to the extent not otherwise barred by the Court's findings above, Cameron's remaining claims fail to satisfy federal pleading standards and thus must be dismissed.[5]

## III. CONCLUSION

Based on the foregoing reasons, Wells Fargo's Motion to Dismiss (Record Document 17) is **GRANTED** and all of Cameron's claims are hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of February, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Because the Court concludes that Cameron has failed to assert a plausible claim for relief, Cameron's ancillary claims for declaratory and injunctive relief are likewise dismissed. See Record Document 1-1 at 22–23.